No. 8948.

## GOMILA & CO. VS. ADAMS BROTHERS.

The stipulation in a contract of charter party that the "vessel is to have a lien on the cargo for freight, dead freight and demurrage," is valid and binding as between the owners and charterers, and the former have a right to require that the cargo furnished by the latter shall be subject to such lien. When cargo is offered shipped as the property of third persons, the latter would not be bound by such lien in absence of their consent, express or clearly implied, to the conditions of the charter party. The owners, there-

fore, have the clear right to have such consent expressed upon the face of the bills of lading, and their refusal to grant clean bills cannot be complained of by the charterers as a breach of the contract.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*John A. Campbell* and *J. Ward Gurley, Jr.*, for Plaintiffs and Appellees:

Where a vessel is chartered for a voyage for a round sum, or specified rate of freight, the charterer has a right to load the vessel himself, or allow others to do it under the contract with him. 2d Ed. Conkling's Admiralty, pp. 173, 175; 3 Woods, 28.

" It is now the established law that the goods of third persons, who are shippers under the charterer, are liable to the owner only to the extent of the freight, payable to the charterers on account of such goods, as in the case of a general ship." Conkling's Ad. 173, 176; The Volunteer, 1 Sumner's R. 551, and authorities there cited; Paul vs. Birch, 2 Atkins, 621; Holt's Law of Shipping, 471; Christie vs. Lewis, 2 Brod. & Bing. 410; Faith vs. East India Company, 4 Barn. & Ald. 630; Parsons on Shipping. 286; The Ibis, 3 Woods, 28; Kerford vs. Mondel, 5 Hurl. & Nor. (Ex.) 931

The clause in the charter party whereby the master agrees to give bills of lading " without prejudice to this charter party," does not change the general rule. 3 Woods, 30; 2 Atk. 621; 5 Hurl. & Nor. (Ex.) 931.

The construction of charter parties, like the construction of other mercantile instruments, should "be liberal, agreeable to the intention of the parties and conformable to the usage of trade in general, and of the particular trade to which the contract relates," 17 How. 69; C. C. arts. 1950, 1951, 1952, 1953, 1955.

*T. J. Semmes & Payne* and *Henry Denis* for Defendants and Appellees:

1. The usage or custom of a port not allowed to vary, abridge or annul the provisions of a charter party, which is to be alone considered in determining the rights of the parties to it. The Alhambra, 5 Prob. Div.; 5 C. P. Div. 130; 10 C. B. 212.

2. As between charterer and owners of a vessel, the charter party and not the bills of lading determine the rights and obligations of the parties. Small vs. Moates, 9 Bing. 392; 100 E. C. L. 808; L. R. 12, Equity Cases, 377.

3. As between owners of vessels under a charter party and third persons who hold bills of lading, such bills of lading are alone to be considered in determining the liability of such third persons, as far as demurrage is concerned. 5 El. & Black. 589; 10 C. B. (N. S.) 802; 4 El. & Black. 945; 15 C. B. 285; 1 B. & Ad. 122; 6 Q. B. 542; Machlachlan on Shipping, 489; Abbott on Shipping, 241.

4. Where charter gives a lien for demurrage, the master has the right, in order to secure this lien, to insert a clause in bills of lading in hands of charterer, or of third persons who have knowledge of charter party. Peek vs. Larsen, L. R. 12, Equity Cases, 377; Balfour vs. Wilkins, 5 Sawyer, 438.

5. Construction of the clause in charter party: "Bills of lading to be signed as presented, without prejudice to charter." 112 E. C. L. 373; 4 Hurls. & Nor. 385.

The opinion of the Court was delivered by

FENNER, J. This interesting case arises out of a contract of charter-party entered into between plaintiffs and defendants, by which the former chartered the latter's vessel, the "Altna Craig," for a voyage from New Orleans to one of certain designated European ports.

The contract stipulated that the charterers were to furnish a full cargo at certain fixed rates of freight, settled the lay-days and running days, allowed for loading and discharging, and the demurrage to be paid in case they were exceeded.

The following are the significant clauses bearing on the instant controversy:

"Bills of lading to be signed as presented, without prejudice to this charter; but any difference of freight to be settled on signing bills of lading, if under chartered rate, in cash, less interest and insurance if over chartered rate, by master's draft payable five days after arrival at port of discharge. * * * The charterers' responsibility under this charter shall cease as soon as the cargo is shipped and the bills of lading signed, provided all the conditions called for in this charter have been fulfilled *or provided for by bills of lading. Vessel to have a lien on the cargo for freight, dead freight and demurrage.*"

The further essential facts may be stated very briefly. The charterers negotiated for shipments on the vessel by third parties and gave them orders on the vessel for clean bills of lading. The master refused to sign bills of lading in favor of such third persons without the insertion of a special clause binding them to "all the conditions of the charter party."

The result was that shippers refused to accept such bills, the charterers were unable to load the vessel, abandoned the contract and bring the present suit against the owners for $7200, as damages occasioned to them by the aforesaid refusal, which is alleged to have been unlawful and in violation of the contract of charter party.

The stipulation of the contract providing, "vessel to have a lien on the cargo for freight, dead freight and demurrage," is certainly clear and unambiguous. It means that the vessel, which, in absence of such a clause and under general principles of maritme law, would have a lien on cargo only for freight due thereon, shall, by this particular agreement, have a lien on the cargo, not only for freight, but for *dead freight and demurrage.*

If this agreement be valid and binding, as between the parties, we find it difficult to understand upon what principle the charterers could require the vessel, or the vessel be bound, to receive cargo upon which it would *not* have "a lien for freight, dead freight and demurrage."

Now, whatever difference of opinion may exist on other points, it is conceded on all hands that under the maritime law, everywhere, the vessel would have no such lien upon cargo shipped by third persons,

unless the latter had expressly or impliedly consented thereto. And considering the *quasi* negotiability of bills of lading, it is doubtful if such consent could be made effective, unless clearly expressed on the face of the bill.

Indeed, it is obvious that the very motive of the shippers in this case in refusing to ship under bills of lading recognizing such lien, was their unwillingness to subject their goods to the same and their desire to have bills of lading which they could negotiate free from said lien.

It follows that, under a contract clearly binding them to furnish a cargo upon which the vessel should have "a lien for freight, dead freight and demurrage," the charterers tendered and required the vessel to receive cargo upon.which it should have no such lien. McLachlan on Merch. Ship. 489, 490; Abbott on Merch. Ships and Seamen, 242; Smith vs. Seiveking, 4 El. & Bl. 945; Wegener vs. Smith, 15 C. B. 285; Shappell vs. Comfort, 100 E. C. L. 808; Peek vs. Larson, L. R. 12 Eq. Cases, 377.

The refusal to receive cargo on such terms cannot possibly be construed into a breach of the contract without writing out of it the clause referred to.

The learned counsel for plaintiff seek to avoid the effect of this clause on two grounds:

1. They contend it is inoperative and of no effect.

2. That it is controlled and nullified by other clauses of the charter party.

## I.

It is conceded that the English authorities above quoted and others maintain the validity and binding effect of such a clause, not only between the parties, but upon third persons who ship under bills of lading expressly accepting the conditions of the charter party.

But it is claimed that this jurisprudence of the English courts is of recent origin and in derogation of the earlier and sounder doctrine which should govern American courts.

The high authority of Lord Tenterden is cited as sustaining the proposition that the clause under discussion is "inoperative." We have examined this reference with care and we are satisfied that it is not susceptible of the construction placed upon it by counsel. It does not suggest that such a clause is not fully binding as between the owners and charterers, which seems to be all that is essential in the present case. It only means that the mere insertion of the clause in a charter party is, by itself, "inoperative" to secure the stipulated lien upon

Gomila & Co. vs. Adams Brothers.

goods shipped by third persons in absence of their consent thereto expressed or implied. This is unquestionably correct and in harmony with the authorities relied on by defendant. Indeed, it formed the very reason why the defendants required the shippers to accept bills of lading subjecting their goods to this condition. No authority is quoted denying the right of parties to make and to execute such an agreement. No principle of law exists upon which such a stipulation can be held to be forbidden or stricken with nullity.

We consider, therefore, that defendants were in their right and committing no breach of the contract when they required that all cargo tendered by the charterers should be subjected to the "lien for freight, dead freight and demurrage," as stipulated by contract.

## II.

Plaintiffs claim that the prior clause: "Bills of lading to be signed as presented, without prejudice to the charter party," etc., regulated the duties of the owners as to the signing of bills of lading and was not enlarged by the subsequent clause which we have been discussing.

It is clear to our minds that this clause had no reference to anything but the rate of freight. It simply said to the charterers: "You are bound, it is true, to pay me the rate of freight agreed upon between ourselves; but you may make contracts with shippers at any rate you please and insert it in their bills of lading, and we will sign them *as presented,* provided you pay the difference if the rate is less, and we will pay you if it is greater than that agreed between us."

This did not, in the least, impair the right of defendants to require that the cargo should be subject to the stipulated lien for "freight, dead freight and demurrage."

It is not pretended that they ever refused to sign bills as presented because of the rate of freight mentioned therein being different from that agreed on in the charter party, on compliance of the charterer with his obligation to pay the difference. They have not, therefore, violated this clause.

In a case indistinguishable from this in every particular, the Circuit Court of the United States, within whose admiralty jurisdiction such contracts commonly fall, has reached the same conclusions now announced by us. The Peer of the Realm, 19 Fed. Rep. No. 3, p. 216.

Like views are sustained in an able opinion by the judge *à quo.*

Judgment affirmed at appellants' costs.